IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:19-CV-3-D

JAMES H. SELF, and CAROLINE J. SELF, )
)
Plaintiffs, )
)
v. )               **ORDER**
)
NATIONSTAR MORTGAGE LLC, d/b/a )
Mr. Cooper, et al., )
)
Defendants. )

On November 19, 2018, James H. Self and Caroline J. Self ("the Selfs" or "plaintiffs") filed

a complaint in Pasquotank County Superior Court against Nationstar Mortgage LLC, d/b/a Mr.

Cooper ("Nationstar"), Wilmington Savings Fund Society ("FSB"), and U.S. Bank National

Association ("U.S. Bank"; collectively, "defendants") [D.E. 1-1]. Plaintiffs allege breach of

contract, defamation, and violations of the North Carolina Debt Collection Act ("NCDCA"), N.C.

Gen. Stat. § 75-50 et seq., the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"),

N.C. Gen. Stat. § 75-1.1 et seq., the North Carolina Mortgage Debt Collection and Servicing Act

("MDCSA"), N.C. Gen. Stat. § 45-90 et seq., the Real Estate Settlement Procedures Act ("RESPA"),

12 C.F.R. §§ 1024.35, 1024.36, the Truth in Lending Act ("TILA"), 12 C.F.R. §§ 1026.41, 1026.36,

and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. See id. Plaintiffs seek a

declaratory judgment, restraining order, and permanent injunction. See id.

On January 11, 2019, defendants removed the action to this court [D.E. 1]. On February 18,

2019, defendants moved to dismiss plaintiffs' complaint [D.E. 15] and filed a memorandum in

support [D.E. 16]. See Fed. R. Civ. P. 12(b)(6). On April 5, 2019, plaintiffs responded in opposition

[D.E. 21]. As explained below, the court grants in part and denies in part defendants' motion to dismiss and dismisses FSB and U.S. Bank as defendants.

I.

The Selfs live at 664 Old Herford Highway, Elizabeth City, North Carolina (the "Property"). See Compl. [D.E. 1-1] ¶ 7. Nationstar is a loan servicer. See id. ¶¶ 8–9.

On April 21, 1997, the Selfs executed a note in favor of American General Finance ("American General"), Nationstar's predecessor-in-interest, with a principal amount of $36,000 and an interest rate of 12.18% ("the April 1997 Note"). See id. ¶¶ 26, 35. Under the terms of the April 1997 Note, the Selfs agreed to pay $519.89 on June 1, 1997, and $436.24 monthly for the following 179 months. See id. ¶ 26. The Selfs secured the April 1997 Note with a deed of trust, which gave American General a lien on the Property. See id. ¶ 27; Ex. C [D.E. 1-1] 3. The April 1997 Note and its deed of trust are no longer in effect. Cf. Compl. [D.E. 1-1] ¶ 31.

On October 20, 1997, the Selfs refinanced the April 1997 Note. See id. ¶ 28; Ex. B [D.E. 1-1]. This note ("the October 1997 Note") had a principal amount of $46,466.80 and an interest rate of 12.03% annually. See Compl. [D.E. 1-1] ¶ 28. Under the terms of the October 1997 Note, the Selfs agreed to pay $619.80 on December 1, 1997, and $512.65 payments until November 1, 2017 ("the Maturity Date"). See Ex. B [D.E. 1-1] 1. The Selfs also secured the October 1997 Note with a deed of trust. See Compl. [D.E. 1-1] ¶ 30; Ex. C [D.E. 1-1] 3.

On October 1, 2002, the Selfs filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of North Carolina ("the Bankruptcy Court"). See Compl. [D.E. 1-1] ¶¶ 23, 34; Ex. A [D.E. 1-1]; Ex. D [D.E. 1-1]. American General, as a secured creditor, filed two secured claims arising from the October 1997 Note: (1) Claim #33 for $43,615.17 (i.e., the outstanding balance of the October 1997 Note); and

(2) Claim #34 for $1,025.30 (i.e., prepetition arrearage). See Compl. [D.E. 1-1] ¶¶ 36, 40. On December 11, 2002, the Bankruptcy Court confirmed the Selfs' bankruptcy plan. See id. ¶ 43. Under the plan's terms, the Selfs would send the trustee $26,400.00 over 12 monthly installments of $800.00 and, consecutively, 24 monthly installments of $700.00. See id. ¶ 44; Ex. H [D.E. 1-1] 1. The plan also stated that the Selfs would make monthly installments to service the October 1997 Note under Claim #33 outside of the plan directly to American General, and that the trustee would pay the prepetition arrearage under Claim #34 as part of the plan itself. See Compl. [D.E. 1-1] ¶ 45; Ex. [D.E. 1-1]. Over the course of the plan, American General received $2050.60 for the prepetition arrearage. See Compl. [D.E. 1-1] ¶ 48; Ex. J [D.E. 1-1] 2.

On October 21, 2005, the Selfs completed all payments required under the plan and the Bankruptcy Court entered an order of discharge under section 1328(a). See Compl. [D.E. 1-1] ¶ 49; Ex. K [D.E. 1-1]. The order "discharged [the Selfs] from all debts provided for by the plan" and prohibited creditors "from attempting to collect any debt that has been discharged in this case." Ex. K [D.E. 1-1]; see Compl. [D.E. 1-1] ¶¶ 50–51. The Bankruptcy court then discharged the trustee and closed the case. See Compl. [D.E. 1-1] ¶ 53.

On October 9, 2015, Nationstar notified the Selfs that it was now their loan servicer. See Compl. [D.E. 1-1] ¶ 54; Ex. L [D.E. 1-1].[1] In Nationstar's notice, it stated that the Selfs owed $1,025.30, which represented the prepetition arrearage amount that the Bankruptcy Court had discharged in October 2005. See Compl. [D.E. 1-1] ¶ 55; Ex. L [D.E. 1-1] 1. On June 3, 2017, Nationstar notified the Selfs that the loan would mature on November 1, 2017, and that the Selfs

---

[1] Springleaf Mortgage Services, Inc. ("Springleaf Mortgage"), was American General's successor-in-interest and transferred the right to service the Selfs' mortgage to Nationstar. See Compl. [D.E. 1-1] ¶ 54. On October 9, 2015, Springleaf Financial Services of North Carolina, f/k/a American General Financial Services, Inc., transferred the rights to the October 1997 Note and the deed of trust securing that Note to U.S. Bank. See id. ¶ 56; Ex. M [D.E. 1-1].

must pay the outstanding amount on or before that date. See Compl. [D.E. 1-1] ¶ 58; Ex. N [D.E. 1-2]. The Selfs spoke with a Nationstar agent, who "informed them . . . that the outstanding balance owed on the Loan, as of the Maturity Date, exceeded $10,000.00." Compl. [D.E. 1-1] ¶ 61. Over the following months, Nationstar sent the Selfs more notices stating that the outstanding balance on the loan exceeded $10,000.00. See id. ¶¶ 64–66, 69; Ex. O [D.E. 1-2]; Ex. P [D.E. 1-2]; Ex. Q [D.E. 1-2]. Nationstar also stated that there was "an escrow advance and disbursement" for payment of applicable county taxes "in the amount of either $523.61 or $520.99." Compl. [D.E. 1-1] ¶ 69. The Selfs allege that they paid all the monthly installments required under the October 1997 Note. See id. ¶ 57. The Selfs also allege that they never agreed to an escrow advance and that, in any event, they paid the taxes on the Property themselves. See id. ¶¶ 70–71.

In October 2017, Nationstar sent the Selfs two transaction histories at the Selfs' request. See Compl. [D.E. 1-1] ¶ 73. The first transaction history detailed the Selfs' payments to American General from October 1997 to October 1, 2014, and the second transaction history detailed the Selfs' payments to American General from October 7, 2014, to October 2, 2017. See id. ¶¶ 74–75; Ex. R [D.E. 1-2]; Ex. S [D.E. 1-2]. The Selfs allege that Nationstar did not properly credit loan payments on these histories, thereby attempting to collect a debt that Nationstar is not entitled to collect. See Compl. [D.E. 1-1] ¶¶ 76–77.

On November 1, 2017, the Selfs tried to make their final payment under the October 1997 Note, but Nationstar rejected the payment without explanation. See id. ¶ 78. Nationstar also terminated the Selfs' online account access, which prevented them from making payments online. See id. ¶ 80. On November 7, 2017, Nationstar notified the Selfs that the total outstanding balance was $11,094.67, of which $10,336.57 was unpaid principal and $204.49 was accrued interest. See id. ¶ 82; Ex. V [D.E. 1-2]. Nationstar also repeated its representations concerning the escrow

4

advance and disbursement for payment of county taxes. See Compl. [D.E. 1-1] ¶ 84.

On December 5, 2017, the Selfs sent a Qualified Written Request ("QWR") to Nationstar. See id. ¶ 90; Ex. X [D.E. 1-2]. On December 12, 2017, Nationstar notified the Selfs' counsel that it knew they represented the Selfs. See Compl. [D.E. 1-1] ¶ 92; Ex. Z [D.E. 1-2]. On December 18, 2017, however, Nationstar notified the Selfs that the total outstanding balance was $11,200.33. See Compl. [D.E. 1-1] ¶ 94; Ex. AA [D.E. 1-2] 1. Nationstar also responded to the QWR, provided some documents, and stated that Nationstar's servicing of the loan complied with state and federal law. See Compl. [D.E. 1-1] ¶¶ 101–05; Ex. CC [D.E. 1-2] 5. The Selfs allege that Nationstar's response omitted requested documents and did not properly justify Nationstar's determination of its own compliance. See Compl. [D.E. 1-1] ¶¶ 105–10. In Nationstar's QWR response, it asserted that the omitted documents were confidential. See id. ¶ 109.

On January 16, 2018, the substitute trustee notified the Selfs, through counsel, that they were in default on the loan and that their Property would be foreclosed unless the Selfs disputed the debt within 30 days. See id. ¶¶ 112–13; Ex. EE [D.E. 1-2]; Ex. FF [D.E. 1-2]. The substitute trustee also stated that the outstanding balance, as of January 16, 2018, was $11,269.81. See Compl. [D.E. 1-1] ¶ 113. On February 9, 2018, the Selfs sent a dispute letter to the substitute trustee. See id. ¶ 115; Ex. GG [D.E. 1-2]. On February 21, 2018, Nationstar responded to the Selfs' dispute letter, provided more documents but withheld others it deemed confidential or irrelevant, and again stated that its servicing of the Selfs' loan complied with all federal and state "guidelines." See Compl. [D.E. 1-1] ¶ 119; Ex. II [D.E. 1-2] 1–3.

On March 6, 2018, the Selfs sent a Notice of Error ("NOE") stating that Nationstar had not properly credited loan payments and had improperly charged other fees. See Compl. [D.E. 1-1] ¶¶ 124–27; Ex. JJ [D.E. 1-2]. On March 23, 2018, Nationstar responded and stated that most payments

5

were applied to interest, not to principal. See id. ¶ 134; Ex. LL [D.E. 1-2] 2. On April 13, 2018, Nationstar notified the Selfs that the outstanding balance was $11,703.55. See Compl. [D.E. 1-1] ¶¶ 137–39; Ex. MM [D.E. 1-2].

On April 13, 2018, the substitute trustee commenced foreclosure proceedings on the Property in Pasquotank County Superior Court. See Compl. [D.E. 1-1] ¶ 140; Ex. NN [D.E. 1-2 ]. The Selfs also allege that, after the Bankruptcy Court's discharge, they "received numerous telephonic communications from Defendant Nationstar, with a prerecorded voice, demanding payment of the Loan, notifying them that they were in default, instructing them to contact Defendant Nationstar immediately, and informing them that a foreclosure would be initiated on the Property due to their alleged default in payments on the Loan." Compl. [D.E. 1-1] ¶ 144. The Selfs seek damages, declaratory relief, and injunctive relief. See id. ¶¶ 152, 160–61, 167, 358–75.

II.

Debtors in bankruptcy cases under Chapter 13 of the United States Bankruptcy Code must file a plan. See 11 U.S.C. § 1321. The debtor's plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." Id. § 1322(b)(2); see Till v. SCS Credit Corp., 541 U.S. 465, 475 & n.11 (2004); Nobelman v. Am. Sav. Bank, 508 U.S. 324, 327 (1993); Hurlburt v. Black, 925 F.3d 154, 159–60 (4th Cir. 2019) (en banc); Burkhart v. Grigsby, 886 F.3d 434, 437–38 (4th Cir. 2018); Anderson v. Hancock, 820 F.3d 670, 673 (4th Cir. 2016); Vitale v. Nationstar Mortgage LLC, No. 7:19-CV-9-D, 2019 WL 4267867, at *3 (E.D.N.C. Sept. 9, 2019) (unpublished). Section 1322(b)(2) prohibits "any fundamental alteration in a debtor's obligations, e.g., lowering monthly payments, converting a variable interest rate to a fixed interest rate, or extending the repayment term of a note."

Anderson, 820 F.3d at 673–74 (quotation omitted); see Hurlburt, 925 F.3d at 160; In re Litton, 330 F.3d 636, 643–44 (4th Cir. 2003). "Claims secured by security interests in the debtor's principal residence may be modified only if the last payment on the original payment schedule is due before the due date of the last payment under the plan . . . ." Anderson, 820 F.3d at 673 (quotation omitted); see 11 U.S.C. § 1322(c)(2); Hurlburt, 925 F.3d at 160; Vitale, 2019 WL 4267867, at *3.

A party may waive statutory protections, including the anti-modification provision of section 1322(b)(2), by consenting to an otherwise impermissible modification. See Vitale, 2019 WL 4267867, at *3; In re Hurlburt, 572 B.R. 160, 170 (Bankr. E.D.N.C. 2017), rev'd on other grounds, Hurlburt, 925 F.3d at 167; In re Smiley, 559 B.R. 215, 217 (Bankr. N.D. Ind. 2016); In re Daniels, 91 B.R. 51, 52 (Bankr. N.D. Ill. 1988). Although Nationstar's predecessor-in-interest actively participated in the bankruptcy proceeding, it did not object to the Selfs' plan. Thus, it implicitly consented to the modification, and has not properly requested a modification of the plan. See Vitale, 2019 WL 4267867, at *3; In re Smiley, 559 B.R. at 217; Corliss Moore & Assocs., LLC v. Credit Control Servs., Inc., 497 B.R. 219, 228–29 (E.D. Va. 2013); see also 11 U.S.C. § 1327; 11 U.S.C. § 1329; cf. Mort Ranta v. Gorman, 721 F.3d 241, 248 (4th Cir. 2013); In re Murphy, 474 F.3d 143, 148–50 (4th Cir. 2007); In re Daewoo Motor Am., Inc., 488 B.R. 418, 426–27 (C.D. Cal. 2011). Accordingly, the Bankruptcy Court's plan and discharge order, which provided that the prepetition arrearage would be paid through the plan, bind the parties.

### III.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009);

*Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. at 678 (quotation omitted); *see Twombly,* 550 U.S. at 570; *Giarratano,* 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." *Massey v. Ojaniit,* 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); *see Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed v. Town of Gilbert,* 135 S. Ct. 2218 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano,* 521 F.3d at 302 (quotation omitted); *see Iqbal,* 556 U.S. at 678–79. Rather, plaintiffs' allegations must "nudge[] their claims," *Twombly,* 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." *Iqbal,* 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 448 (4th Cir. 2011); *see* Fed. R. Civ. P. 10(c); *Goines v. Valley Cmty. Servs. Bd.,* 822 F.3d 159, 165–66 (4th Cir. 2016); *Thompson v. Greene,* 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. *Goines,* 822 F.3d at 166. Additionally, a court may take judicial notice of public records when evaluating a motion to dismiss for failure to state a claim. *See, e.g.,* Fed. R. Evid. 201(d); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007); *Philips v. Pitt Cty. Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009).

Defendants' motion to dismiss requires the court to consider the plaintiffs' state law claims,

and the parties agree that North Carolina law applies to this action. Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issue. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See id.; Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted).[2] In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there [are] persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 398 (quotation omitted); Hicks v. Feiock, 485 U.S. 624, 630 & n.3 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); Day & Zimmerman, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); see Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

## A.

In count one, the Selfs allege that Nationstar breached its contract with them, as modified by their Chapter 13 bankruptcy plan. Under North Carolina law, a breach of contract claim has two elements: (1) the existence of a valid contract and (2) a breach of the terms of that contract. See McLamb v. T.P. Inc., 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005); Cater v. Barker, 172 N.C. App. 441, 445, 617 S.E.2d 113, 116 (2005), aff'd, 360 N.C. 357, 625 S.E.2d 778 (2006) (per

---

[2] North Carolina does not have a mechanism to certify questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 397–98 (4th Cir. 2013).

curiam); Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 845 (2000). "Non-performance of a valid contract is a breach thereof unless the person charged shows some valid reason which may excuse the non-performance; and the burden of doing so rests upon him." Cater, 172 N.C. App. at 447, 617 S.E.2d at 117 (quotation and alterations omitted); Blount-Midyette v. Aeroglide Corp., 254 N.C. 484, 488, 119 S.E.2d 225, 228 (1961); see Michael Borovsky Goldsmith LLC v. Jewelers Mut. Ins. Co., 359 F. Supp. 3d 306, 311 (E.D.N.C. 2019); Barbour v. Fid. Life Ass'n, 361 F. Supp. 3d 565, 572 (E.D.N.C. 2019); Abbington SPE, LLC v. U.S. Bank, Nat'l Assoc., 352 F. Supp. 3d 508, 517 (E.D.N.C. 2016), aff'd, 698 F. App'x 750 (4th Cir. 2017) (per curiam) (unpublished). "[A] lender is only obligated to perform those duties expressly provided for in the loan agreement to which it is a party." Camp v. Leonard, 133 N.C. App. 554, 560, 515 S.E.2d 909, 913 (1999); see Dallaire v. Bank of Am., N.A., 367 N.C. 363, 368, 760 S.E.2d 263, 266–67 (2014); Vitale, 2019 WL 4267867, at *4; Hetzel v. JPMorgan Chase Bank, N.A., No. 4:13-CV-236-BO, 2017 WL 603286, at *8 (E.D.N.C. Feb. 14, 2017) (unpublished).

The Selfs plausibly allege that Nationstar breached its contract with them, as modified by the Chapter 13 plan and discharge order. See Compl. [D.E. 1-1] ¶¶ 170–92. Accordingly, the court denies defendants' motion to dismiss the Selfs' breach of contract claim.

## B.

In count two, the Selfs allege that Nationstar violated the NCDCA. See id. ¶¶ 193–219. "The NCDCA prohibits debt collectors from engaging in unfair debt collection practices, including the use of threats, coercion, harassment, unreasonable publications of the consumer's debt, deceptive representations to the consumer, or other unconscionable means." Ross v. FDIC, 625 F.3d 808, 817 (4th Cir. 2010); Vitale, 2019 WL 4267867, at *5; see N.C. Gen. Stat. §§ 75-50–75-56. An NCDCA claim has three threshold requirements. See Davis Lake Cmty. Ass'n v. Feldmann, 138 N.C. App.

10

292, 295, 530 S.E.2d 865, 868 (2000); Reid v. Ayers, 138 N.C. App. 261, 263, 531 S.E.2d 231, 233 (2000). First, the "obligation owed must be a 'debt;' second, the one owing the obligation must be a 'consumer;' and third, the one trying to collect the obligation must be a 'debt collector.'" Reid, 138 N.C. App. at 263, 531 S.E.2d at 233; see Glenn v. FNF Servicing, Inc., No. 5:12-CV-703-D, 2013 WL 4095524, at *3 (E.D.N.C. Aug. 13, 2013) (unpublished).

If a plaintiff meets these threshold requirements, a plaintiff must establish the elements of a UDTPA claim: (1) an unfair or deceptive act (2) in or affecting commerce (3) proximately causing injury. See Ross, 625 F.3d at 817; Campbell v. Wells Fargo Bank, N.A., 73 F. Supp. 3d 644, 649 (E.D.N.C. 2014); Feldmann, 138 N.C. App. at 296, 530 S.E.2d at 868; Reid, 138 N.C. App. at 266, 531 S.E.2d at 235.

The Selfs have plausibly alleged that Nationstar contacted them after Nationstar had been notified by plaintiffs' attorney that the attorney represented plaintiffs. See N.C. Gen. Stat. § 75-55(3). Moreover, the Selfs have plausibly alleged that they suffered injury as a result of Nationstar's conduct and that Nationstar engaged in fraudulent, deceptive, or misleading practices in servicing their loan. See Compl. [D.E. 1-1] ¶¶ 201–03. Accordingly, the court denies defendants' motion to dismiss plaintiffs' NCDCA claim.

As for the Selfs' UDTPA claim, the NCDCA "exclusively constitute[s] the unfair or deceptive acts or practices proscribed by [the UDTPA]" in debt collection matters. N.C. Gen. Stat. § 75-56(a); see Compl. [D.E. 1-1] ¶¶ 211–12. In other words, the NCDCA "supplants the UDTPA" in the debt collection context. Hester v. Dish Network, LLC, No. 7:14-CV-282-D, 2016 WL 4595690, at *5 n.3 (E.D.N.C. Sept. 2, 2016) (unpublished); see Vitale, 2019 WL 4267867, at *5; Musenge v. SmartWay of the Carolinas, LLC, No. 3:15-cv-153-RJC-DCK, 2018 WL 4440718, at *5 (W.D.N.C. Sept. 17, 2018) (unpublished); Ross v. Washington Mut. Bank, 566 F. Supp. 2d 468,

11

479 (E.D.N.C. 2008), aff'd sub nom., Ross v. FDIC, 625 F.3d 808 (4th Cir. 2010); DIRECTV, Inc. v. Cephas, 294 F. Supp. 2d 760, 765 (M.D.N.C. 2003). Accordingly, the court grants defendants' motion to dismiss the Selfs' UDTPA claim to the extent that the Selfs assert such a claim.

## C.

In count three, the Selfs allege that Nationstar violated the MDCSA. See Compl. [D.E. 1-1] ¶¶ 220–34. The MDCSA applies to servicers of home loans "regardless of whether the loan is considered in default or the borrower is in bankruptcy or the borrower has been in bankruptcy[.]" N.C. Gen. Stat. § 45-91. A servicer is "the person responsible for servicing of a loan[,]" which involves receiving any scheduled periodic payments from a borrower under the terms of the loan and other activities as required by a loan. 12 U.S.C. § 2605(i)(2)–(3); N.C. Gen. Stat. § 45-90(2). The MDCSA governs activities including accessing fees, processing payments, publishing statements, handling escrow funds, and responding to borrowers' requests for information. See N.C. Gen. Stat. §§ 45-91–45-93.

As for section 45-91, plaintiffs plausibly allege that the statements they received did not comport with N.C. Gen. Stat. § 45-91(1)(b). Cf. 12 C.F.R. § 1026.41(b)–(d). Moreover, plaintiffs plausibly allege injury as a result of Nationstar's violations. Cf. Vitale, 2019 WL 4267867, at *5–6; Polanco v. HSBC Bank USA Nat'l Ass'n, No. 3:17-CV-466-GCM, 2019 WL 2590964, at *8 (W.D.N.C. June 21, 2019) (unpublished); Cole v. Wells Fargo Bank, N.A., No. 1:15-cv-39-MR, 2016 WL 737943, at *12 (W.D.N.C. Feb. 23, 2016) (unpublished). As for section 45-92, the Selfs plausibly allege that Nationstar violated its obligations under that section. See N.C. Gen. Stat. § 45-92. Accordingly, the court denies defendants' motion to dismiss the Selfs' MDCSA claim against Nationstar.

As for the Selfs' MDCSA claims against FSB and U.S. Bank, the Selfs did not respond to

defendants' argument that FSB and U.S. Bank are not servicers under the MDCSA and thus have abandoned their MDCSA claims against FSB and U.S. Bank. In any event, even assuming that the Selfs did not abandon the claims, FSB and U.S. Bank are not servicers under the MDCSA. See, e.g., Collins v. First Fin. Servs., Inc., No. 7:14-CV-288-FL, 2016 WL 589688, at *9 (E.D.N.C. Feb. 10, 2016) (unpublished). Accordingly, to the extent the Selfs allege such claims, the court grants defendants' motion to dismiss the Selfs' MDCSA claims against FSB and U.S. Bank.

D.

In count four, the Selfs allege that Nationstar violated the TCPA. See Compl. [D.E. 1-1] ¶¶ 235–46. The TCPA makes it unlawful for any person

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States . . . .

See 47 U.S.C. § 227(b)(1)(A); Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 373 (2012); Cunningham v. Gen. Dynamics Info. Tech., Inc., 888 F.3d 640, 644–45 (4th Cir. 2018); Galbreath v. Time Warner Cable, Inc., No. 7:14-CV-61-D, 2015 WL 9450593, at *2 (E.D.N.C. Dec. 22, 2015) (unpublished). The TCPA defines an automatic telephone dialing system ("ATDS") as "equipment which has the capacity— (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

Prior express consent is a defense on which Nationstar ultimately bears the burden of proof. See E & G, Inc. v. Mount Vernon Mills, Inc., 316 F. Supp. 3d 908, 911–12 (D. S.C. 2018); Snow v. Global Credit & Coll. Corp., No. 5:13-CV-721-FL, 2014 WL 5781439, at *4–5 (E.D.N.C. Nov. 6, 2014) (unpublished); cf. Am. Assoc. of Political Consultants, Inc. v. Fed. Commc'ns Comm., 923

13

F.3d 159, 162 (4th Cir. 2019) (framing prior express consent as a statutory exemption). However, the FCC and most courts read the TCPA to provide that "a telephone consumer who provides her number to another party consents to receive calls or texts from that party." Reardon v. Uber Techs., Inc., 115 F. Supp. 3d 1090, 1098 (N.D. Cal. 2015) (collecting cases); see Galbreath, 2015 WL 9450593, at *2–3; In the Matter of Rules & Regs. Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling, 23 FCC Rcd. 559, 564 ¶ 9, 2008 WL 65485, at *3 ¶ 9 (Jan. 4 2008). Courts disagree concerning whether a TCPA plaintiff must plausibly allege express prior consent to state a claim under section 227(b)(1)(A)(iii). Compare Zean v. Fairview Health Servs., 858 F.3d 520, 525–26 & n.3 (8th Cir. 2017) (yes), with Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037, 1044 (9th Cir. 2017) (no); Murphy v. DCI Biologicals Orlando, LLC, 797 F.3d 1302, 1304–05 (11th Cir. 2015) (no). The Fourth Circuit has not yet addressed the issue.

The court assumes without deciding that to state a claim under the TCPA for calls made to a cell phone, a plaintiff must allege that (1) a call was placed to a cell or wireless phone (2) by the use of any automatic dialing system or leaving an artificial or prerecorded message (3) without prior express consent of the recipient. 47 U.S.C. § 227(b)(1)(A)(iii); Brown v. Credit Mgmt., LP, 131 F. Supp. 3d 1332, 1343 (N.D. Ga. 2015); Moore v. Dish Network, LLC, 57 F. Supp. 3d 639, 656 (N.D. W. Va. 2014); Clayton v. Aaron's, Inc., No. 3:13-CV-219, 2013 WL 3148174, at *2 (E.D. Va. June 19, 2013) (unpublished); Pugliese v. Prof'l Rec. Serv., Inc., No. 09-12262, 2010 WL 2632562, at *7 (E.D. Mich. June 29, 2010) (unpublished). The Selfs' TCPA claim under section 227(b)(1)(A)(iii) ekes across the line from possible to plausible. See, e.g., Hossfeld v. Gov't Emps. Ins. Co., 88 F. Supp. 3d 504, 509–10 (D. Md. 2015); Castro v. Green Tree Servicing, LLC, 959 F. Supp. 2d 698, 704–05, 721 (S.D.N.Y. 2013). Whether this claim will survive summary judgment is an issue for another day. Accordingly, the court denies defendants' motion to dismiss the Selfs'

TCPA claim.

E.

In count five, the Selfs allege that Nationstar is liable for abuse of process because it filed a foreclosure complaint on the Property. See Compl. [D.E. 1-1] ¶¶ 247–54. Under North Carolina law, "the elements of an abuse of process claim are: (1) a prior proceeding[] initiated by defendant to achieve an ulterior motive or purpose; and (2) once that proceeding was initiated, some willful act not proper in the regular prosecution of the proceed was committed." Universal Underwriters, Inc. Ins. Co. v. Lallier, 334 F. Supp. 3d 723, 734 (E.D.N.C. 2018); see Franklin v. Yancey Cty., No. 1:09cv199, 2010 WL 317804, at *5 (W.D.N.C. Jan. 19, 2010) (unpublished); Semones v. S. Bell Tel. & Tel. Co., 106 N.C. App. 334, 341, 416 S.E.2d 909, 913 (1992). A plaintiff satisfies the ulterior motive requirement "when the plaintiff alleges that the prior action was initiated by the defendant or used by him to achieve a purpose not within the intended scope of the process used." Hewes v. Wolfe, 74 N.C. App. 610, 614, 330 S.E.2d 16, 19 (1985); see Lallier, 334 F. Supp. 3d at 734; Stanback v. Stanback, 297 N.C. 181, 200, 254 S.E.2d 611, 624 (1979), disapproved of on other grounds by Dickens v. Puryear, 302 N.C. 437, 446, 276 S.E.2d 325, 331 (1981).

As for the Selfs' abuse of process claim, the Selfs do not plausibly allege that Nationstar initiated the foreclosure proceeding to achieve a purpose outside its intended scope (even if it lacked merit). See, e.g., Pinewood Homes, Inc. v. Harris, 184 N.C. App. 597, 603, 646 S.E.2d 826, 831–32 (2007); Hewes, 74 N.C. App. at 614, 330 S.E.2d at 19. Accordingly, the court grants defendants' motion to dismiss the Selfs' abuse of process claim.

F.

In count six, the Selfs allege that Nationstar is liable for negligence in servicing the loan. See Compl. [D.E. 1-1] ¶¶ 255–67. "Negligence is the failure to exercise proper care in the

15

performance of a legal duty which the defendant owed the plaintiff under the circumstances surrounding them." Dunning v. Forsyth Warehouse Co., 272 N.C. 723, 725, 158 S.E.2d 893, 895 (1968); Moore v. Moore, 268 N.C. 110, 112, 150 S.E.2d 75, 77 (1966); Coulter v. Catawba Cty. Bd. of Educ., 189 N.C. App. 183, 185, 657 S.E.2d 428, 430 (2008). To establish actionable negligence, a plaintiff must show "(1) defendant failed to exercise due care in the performance of some legal duty owed to plaintiff under the circumstances; and (2) the negligent breach of such duty was the proximate cause of the injury." Whisnant v. Carolina Farm Credit, 204 N.C. App. 84, 93–94, 693 S.E.2d 149, 156 (2010); see Ward v. Carmona, 368 N.C. 35, 37, 770 S.E.2d 70, 72 (2015); Bridges v. Parrish, 366 N.C. 539, 541, 742 S.E.2d 794, 796 (2013).

As for the Selfs' negligence claim, "[i]n an ordinary debtor-creditor transaction, the lender's duties are defined by the loan agreement and do not extend beyond its terms." Arnesen v. Rivers Edge Golf Club & Plantation, Inc., 368 N.C. 440, 449, 781 S.E.2d 1, 8 (2015); see Dallaire, 367 N.C. at 368, 760 S.E.2d at 266–67; Camp, 133 N.C. App. at 560, 515 S.E.2d at 913. The Selfs do not allege any duty of care that Nationstar owed or breached beyond the loan agreement. See Vitale, 2019 WL 4267867, at *8; Hacker v. Wells Fargo Bank, N.A., No. 4:15-CV-163-BR, 2016 WL 5678341, at *6 (E.D.N.C. Sept. 30, 2016) (unpublished); Synovus Bank v. Karp, 887 F. Supp. 2d 677, 690 (W.D.N.C. 2012), aff'd in part sub nomen, Synovus Bank v. Tracy, 603 F. App'x 121 (4th Cir. 2015) (per curiam) (unpublished). Moreover, to the extent that the Selfs predicate any negligence claim on alleged violations of RESPA, TILA, the NCDCA, or the UDTPA, North Carolina law only recognizes negligence per se claims for violations of public safety statutes. See Stein v. Asheville City Bd. of Educ., 360 N.C. 321, 326, 626 S.E.2d 263, 266 (2006); Collins, 2016 WL 589688, at *19. Accordingly, the court grants defendants' motion to dismiss the Selfs' negligence claim.

## G.

In counts seven, eight, and nine, the Selfs allege three TILA claims: (1) failure to provide the Selfs with a timely and accurate payoff statement or quote in violation of 12 C.F.R. § 1026.36(c)(3); (2) failure to properly credit payments made on the loan under the loan documents in violation of 12 C.F.R. § 1026.36(c)(1); and (3) failure to disclose to the Selfs the total amounts of funds held in a suspense account on periodic statements provided to the Selfs in violation of 12 C.F.R. § 1026.36(c)(1)(ii). See Compl. [D.E. 1-1] ¶¶ 268–309. Nationstar argues only that the Selfs fail to plausibly allege a concrete injury, and Nationstar appears to concede that it violated some of the cited regulations. See [D.E. 16] 19 ("[A]ny technical failure . . . [is] ancillary and inconsequential.").

Under 12 C.F.R. § 1026.36(c)(3), a creditor "must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date." 12 C.F.R. § 1026.36(c)(3); see Vitale, 2019 WL 4267867, at *7; Aghazu v. Severn Sav. Bank, No. PJM 15-1529, 2016 WL 808823, at *4–6 (D. Md. Mar. 2, 2016) (unpublished); Boardley v. Household Fin. Corp. III, 39 F. Supp. 3d 689, 705 (D. Md. 2014). "The statement shall be sent within a reasonable time, but in no case more than seven business days, after receiving a written request from the consumer or any person acting on behalf of the consumer." 12 C.F.R. § 1026.36(c)(3). The Selfs have not plausibly alleged that Nationstar violated section 1026.36(c)(3). See Compl. [D.E. 1-1] ¶¶ 268–80. Thus, the court grants Nationstar's motion to dismiss this claim.

Under 12 C.F.R. § 1026.36(c)(1), "[n]o servicer shall fail to credit a periodic payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer reporting . . . ." Id. § 1026.36(c)(1)(i). "A periodic payment . . . is an amount sufficient to cover principal,

interest, and escrow (if applicable) for a given billing cycle." Id. "If a servicer specifies in writing requirements for the consumer to follow in making payments, but accepts a payment that does not conform to the requirements, the servicer shall credit the payment as of five days after receipt." Id. § 1026.36(c)(1)(iii). The Selfs plausibly allege that Nationstar failed to properly credit payments in violation of section 1026.36(c)(1). See Compl. [D.E. 1-1] ¶¶ 281–94; see, e.g., Vitale, 2019 WL 4267867, at *7. Thus, the court denies Nationstar's motion to dismiss this claim.

Under 12 C.F.R. § 1026.36(c)(1)(ii), "[a]ny servicer that retains a partial payment . . . in a suspense or unapplied funds account shall" both disclose to the consumer the amount in the account and, upon accumulation of sufficient funds to cover a periodic payment, shall treat such funds as a periodic payment. Id. § 1026.36(c)(1)(ii). The Selfs plausibly allege that Nationstar did not properly disclose or credit partial payments in violation of section 1026.36(c)(1)(ii). See Compl. [D.E. 1-1] ¶¶ 295–309; see, e.g., Whitacre v. Nations Lending Corp., No. 5:19CV809, 2019 WL 3477262, at *4 (N.D. Ohio July 31, 2019) (unpublished). Thus, the court denies Nationstar's motion to dismiss this claim. As for damages, the Selfs have plausibly alleged that they suffered actual injuries from Nationstar's alleged violations. See Compl. [D.E. 1-1] ¶¶ 268–309. Accordingly, the court grants in part defendants' motion to dismiss and dismisses the claim under section 1026.36(c)(3).

H.

In counts ten and eleven, the Selfs allege that Nationstar violated the RESPA by failing to conduct a reasonable investigation into its alleged servicing errors and by failing to correct its errors in servicing the Selfs' loan. See Compl. [D.E. 1-1] ¶¶ 310–47.

"RESPA is a consumer protection statute that regulates the real estate settlement process by placing various obligations on mortgage servicers." Nelson v. Nationstar Mortg. LLC, No. 7:16-CV-307-BR, 2017 WL 1167230, at *3 (E.D.N.C. Mar. 28, 2017) (unpublished) (quotation and alteration

18

omitted); see 12 U.S.C. § 2601. When a borrower notifies a servicer of a possible error, servicers must complete a reasonable investigation, provide the borrower with a written notification of its determination of whether an error occurred, and provide the borrower with all documents and information that the servicer relied on in making its determination. See 12 C.F.R. § 1024.35(e); see Wirtz v. Specialized Loan Servicing, LLC, 886 F.3d 713, 717–18 (8th Cir. 2018); Warren v. Green Tree Servicing, LLC, 663 F. App'x 703, 705 (10th Cir. 2016) (unpublished); Vitale, 2019 WL 4267867, at *6. Courts disagree about whether RESPA and section 1024.35 create a private right of action for alleged violations of section 1024.35. See, e.g., Lage v. Ocwen Loan Servicing LLC, 839 F.3d 1003, 1007 (11th Cir. 2016); Lucas v. New Penn Fin., LLC, No. 17-cv-11472-ADB, 2019 WL 404033, at *4 (D. Mass. Jan. 31, 2019) (unpublished) (collecting cases); Jones v. Wells Fargo Bank, N.A., No. ELH-18-8, 2018 WL 4382916, at *10–11 (D. Md. Sept. 12, 2018) (unpublished); Miller v. HSBC Bank U.S.A., N.A., No. 13-Civ-7500, 2015 WL 585589, at *11 (S.D.N.Y. Feb. 11, 2015) (unpublished). A majority of courts, however, have held that borrowers may sue to enforce section 1024.35. See In re Coppola, 596 B.R. 140, 153 & n.49 (Bankr. D. N.J. 2018) (collecting cases).

Assuming without deciding that RESPA creates a private right of action for alleged violations of section 1024.35, the Selfs do not plausibly allege that Nationstar failed to conduct a reasonable investigation. The Selfs also did not respond to Nationstar's argument that the Selfs do not plausibly allege actual damages. Thus, the court grants Nationstar's motion to dismiss the Selfs' RESPA claim against Nationstar.

As for the Selfs' RESPA claims against FSB and U.S. Bank, the Selfs did not respond to defendants' arguments that neither is a servicer under RESPA. Thus, the Selfs have abandoned the claims against FSB and U.S. Bank, and the court grants FSB and U.S. Bank's motion to dismiss the

Selfs' RESPA claims against them.[3] Accordingly, the court grants defendants' motion to dismiss the Selfs' RESPA claims.

## I.

The Selfs did not respond to defendants' motion to dismiss their defamation claim. Thus, the Selfs have abandoned the claim. See, e.g., Vitale, 2019 WL 4267867, at *8; Carmon v. Pitt Cty., No. 5:18-CV-433-D, 2019 WL 938875, at *4 (E.D.N.C. Feb. 26, 2019) (unpublished); Bronitsky v. Bladen Healthcare, LLC, No. 7:12-CV-147-BO, 2013 WL 5327447, at *1 (E.D.N.C. Sept. 20, 2013) (unpublished). Alternatively, the Selfs do not plausibly allege a defamation claim. Accordingly, the court grants defendants' motion to dismiss the Selfs' defamation claim.

## J.

The Selfs did not respond to defendants' motion to dismiss their requests for a restraining order and injunctions. Thus, the Selfs have abandoned the claim. See, e.g., Vitale, 2019 WL 4267867, at *8; Carmon, 2019 WL 938875, at *4; Bronitsky, 2013 WL 5327447, at *1. Alternatively, the Selfs have not plausibly alleged that they are entitled to a temporary restraining order or a permanent or preliminary injunction under the governing standards. See Fed. R. Civ. P. 65; Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010), reissued in relevant part, 607 F.3d 355 (4th Cir. 2010) (per curiam); U.S. Dep't of Labor v. Wolf Run Mining Co., 452 F.3d 275, 281 n.1 (4th Cir. 2006). Accordingly, the court grants defendants' motion to dismiss the Selfs' claim for a restraining order and injunctions.

---

[3] Although the Selfs allege that "defendants" are liable for many of the Selfs' remaining claims, the Selfs do not plausibly allege that FSB or U.S. Bank are vicariously liable on the Selfs' remaining claims and do not respond to defendants' argument on this issue. Thus, to the extent that the Selfs purport to allege any other claims against FSB or U.S. Bank under a vicarious liability theory, the court dismisses all other claims against FSB and U.S. Bank for failure to state a claim.

III.

In sum, the court GRANTS in part and DENIES in part defendants' motion to dismiss [D.E. 15]. Specifically, the court DENIES defendants' motion to dismiss plaintiffs' breach of contract claim, DENIES defendants' motion to dismiss plaintiffs' NCDCA claim, DENIES defendants' motion to dismiss plaintiffs' TCPA claim, and DENIES in part and GRANTS in part defendants' motion to dismiss plaintiffs' TILA claims. The court GRANTS defendants' motion to dismiss plaintiffs' UDTPA claim, GRANTS defendants' motion to dismiss plaintiffs' abuse of process claim, GRANTS defendants' motion to dismiss plaintiffs' negligence claim, GRANTS defendants' motion to dismiss plaintiffs' RESPA claim, GRANTS defendants' motion to dismiss plaintiffs' defamation claim, GRANTS defendants' motion to dismiss plaintiffs' claims for injunctive relief, and DISMISSES FSB and U.S. Bank as defendants from this action. The parties shall participate in a court-hosted settlement conference with United States Magistrate Judge Gates.

SO ORDERED. This 26 day of September 2019.

JAMES C. DEVER III
United States District Judge

21